BELLER VS. JONES.

On the question whether a party should be released from the performance of a contract on account of incapacity, and where the evidence is insufficient to establtablish such incapacity as would alone release him from the contract, his weakness of mind should be taken into consideration as one circumstance in determining whether the completion of the contract should be exacted.

The opinions, as to the mental capacity of a person to make a contract, of those who, from habits of daily or common intercourse with, or observation of the party, can make an intelligent comparison of his mental manifestations with his conduct when he was admitted to enjoy the full use of his natural faculties, are competent evidence with the facts upon which they are founded.

No evidence could be adduced more convincing to show mental derangement, or want of natural sense than an agreement by a parent to convey to a stranger all his property in consideration that he will raise, and educate his children.

A court of chancery would never enforce the performance of a contract by a parent by which his children were to be torn from him and their home, and committed to the care of one who might have no feeling for them and whose interest would be to avoid the expenses of their support; but to call into exercise the power of a court of chancery to rescind such a contract there must be imposition, fraud or undue influence with weakness of mind on the part of the parent.

But for such a contract to stand, the party obtaining it must show a compliance with his undertaking, a disposition to act in good faith, and do everything that he ought to do under the circumstances; and so, where he has failed to make such covenants as he had promised for the faithful performance of his agreement, involving such interests on the part of the father, and a permanent misunderstanding exists as to its fulfillment, and a breach cannot be compensated in damages nor a court of chancery execute the agreement of the parties, a rescission of the contract is the only adequate remedy.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

HEMPSTEAD, for the appllant.

The attempt to show that Jones was insane, or not capable of making a contract, was a signal failure. He was fully capable of contracting. He was endowed with such a degree of reason and judgment as to enable him to comprehend the the subject. He was not capable of managing his affairs. The disposition he made of his property was neither improvident nor unreasonable.

Courts will not interfere with the solemn contracts of men, nor disturb them on slight grounds. *Kelly's Heirs vs. McGuire,* 15 *Ark.* 597; *Sears vs. Shafer,* 1 *Barb.* 410; *Chitty on Con.* 134.

The only ground upon which such a conveyance as that made in this case can be set aside is that of fraud. No fraud has been or can be shown. It is not pretended that Beller misrepresented or suppressed anything to induce Jones to make the conveyance. It is not pretended that he overreached Jones by artifice or otherwise, or that Jones did not know what he was about.

As to the competency to enter into the contract there can be no doubt. The witnesses all prove that the appellant was capable of managing his affairs. The conveyance can never be assailed for want of capacity in the grantor. *Jackson vs. King,* 4 *Cow.* 216.

GARLAND & RANDOLPH, and JENNINGS for appellee.

Insanity sufficient to discharge a party from the obligation of his contracts, may be established by a slighter degree of proof than is required to relieve him from criminal responsibility. 2 *Greenl. Ev. sec.* 369–70, 372; *Gore vs. Gibson*, 13 *Mees. & Wells.* 623; *McCreight vs. Aikin, Rice (Law) Rep.* 56; 1 *Parsons on Con* 310, *et seq.*; 15 *John. Rep.* 503; 5 *Munf.* 466.

As to when equity will set aside conveyances on the ground of fraud, undue influence, etc. See *Wheelan vs. Wheelan*, 3 *Cow.* 537; 14 *Ves. J.* 273; 1 *Story's Eq. secs.* 238, 239, 251 *and notes;* 9 *How. (U. S.) Rep.* 55; 13 *Eng. Law & Eq.* 74; *Willard's Eq. Jur.* 170.

Mere inadequacy of consideration, when coupled with slight circumstances of imposition or undue influence, is sufficient to establish fraud and consequently to avoid a contract. 2 *Bro. Ch. Rep.* 167; 17 *Verm.* 9; 2 *Yerg.* 294; *Adams Eq.* 79 *and note* 1; *Will. Eq. J.* 202.

When a case of fraud, or imposition or undue influence is established courts of equity will set aside the deed or contract, or refuse a specific performance, or make whatever decree the circumstances of the case may require to insure justice. *Willard's Eq. Jur.* 302, 308; 1 *Story's Eq. Jur. sec.* 439; 2 *Ib. sec.* 694–5.

Mr. Justice FAIRCHILD delivered the opinion of the court.

Johnathan Jones, the appellee, and the plaintiff below, for sometime previous to the 17th of August, 1857, had been subject to great depression of spirits and distress of mind from unhappy domestic relations, and to an extent that induced the generality of his neighbors to suppose him to be so impaired in mind, as to be unfit for the management of his affairs; while a few of his neighbors, and casual acquaintances, or such as had not known him till the time mentioned, did not discover but that he was equal to the discreet transaction of ordinary business.

Without detailing the testimony upon this part of the case,

we are satisfied to say from it, that, in August, 1857, Jones was enfeebled in mind so as to be plainly perceptible to his neighbors and intimate acquaintances, but not to strangers, or those who did not know him well. The result of our investigation upon this subject is, that if the question of the validity of the contract made between the parties depended upon the capacity of Jones to bind himself, it would be difficult to release him from its performance upon the ground of incapacity alone; but his weakness of mind should be taken into consideration as one circumstance in determining whether a completion of the contract he made with Beller, the defendant below and appellant here, should be exacted of him, by the reversal of the decree of the court below, and the dismissal of his bill.

Although many witnesses testify upon the condition of the mind of Jones, not many of his acts, but few specific facts are stated, from which an opinion can be formed by us independent of the opinions of those who are competent to give an opinion. And in accordance with the ruling of this court, in *Kelly vs. McGuire*, 15 *Ark.* 601, we hold them to be competent to give such opinion as ought to be respected, who from habits of daily or common intercourse with, or observation of appellee, could make an intelligent comparison of his mental manifestations with his conduct when he was admitted to enjoy the full use of his natural faculties.

According to the opportunities, intelligence, and impartiality of the witnesses, their opinions will be more or less valuable; but their opinions as such, with the facts upon which they are founded, are competent evidence.

On the 17th of August, 1857, Jones executed a conveyance to Beller, of his lands, negroes, and other effects, in short, of all his property for the expressed consideration of three thousand dollars.

A few days after, before Beller had paid, or executed his notes for the three thousand dollars to be paid to Jones, it was agreed between them, that the consideration for the property should be changed, and that, as the consideration for the deed,

Beller should take the five children of Jones, Margaret Ann, eighteen years old; Rennick R., fifteen; William W., eleven, Albert, eight; and Susan five years old, board and clothe them; give each of them a good English education, and treat them in all respects as his own, until they should respectively become twenty-one years old, or marry, when Beller should pay to each, five hundred dollars in cash; and to secure the performance of such agreement by Beller, he was to make to Jones a good and satisfactory bond, with appropriate covenants, which Jones could not indicate, but which were to be approved by him upon such advice as he should obtain in Washington.

Such is the agreement as charged in the bill.

Other matters are stated as inducing Jones to make the proposition, and hinting at Beller's procuring the wife of Jones to urge him to the new arrangement, but are not stated, because it does not appear in the subsequent part of the case, that Beller, up to this time, can be charged with stimulating Jones to the engagement as made, or to that which was first proposed, a purchase of the property for three thousand dollars.

The defendant Beller, in his answer, admitted the making of the conveyance for the expressed consideration of three thousand dollars, and the substitution of another by the agreement as set forth in the bill, saving that he modifies Jones' statement of the agreement, by saying that it was a part of the agreement, that if either of the children should die before arriving to manhood, or womanhood, he should pay the living children such sum as the board, clothing, education, etc., of the deceased one would have been worth, from its death till the age before mentioned, which provisions for the children were upon the condition that they would stay with him, and if they would not, he was to be free from all obligation touching their board, clothing and education, and that the education of the children was dependent upon their willingness to go to school.

Subject to these modifications, Beller admitted the agreement, and that it was the consideration of the deed from Jones to him, and that he agreed to execute his obligation to that

effect when he should return from Washington, where it could be properly prepared.

The deed made by Jones in Washington, the 17th of August, 1857, was not substituted by one reciting the agreement, or new consideration, but as it had been written, it was acknowledged, at the residence of Jones, by him and his wife, the 20th of the same month.

Beller admits that before he left Jones' house, he gave to Jones a short, informal instrument, certifying the substance of the agreement, but he denies the allegation of the bill concerning its delivery to Jones without its being read to him, and just as he himself was about to leave, or that he had any intention to defraud or injure Jones, by means of the writing, and admits that he was to have the agreement properly drawn when Jones should come to Washington, but did not promise to have it drawn to the satisfaction of Jones.

That paper contained the following words:

"This is to certify that I am to pay Margaret A. Jones, Rennick R. Jones, William W. Jones, Albert T. Jones and Susan E. Jones, heirs of Jonathan Jones, five hundred dollars each, on his or her arriving at lawful age, or when M. A. Jones shall marry, in consideration of a certain list of property set forth and described in a deed, bill of sale, and obligation executed to me on the 17th day of August, 1857. Miss M. A. Jones is to have for her part a negro girl named Frances, if she chooses, at a fair valuation. A. T. BELLER."

The answer admits, that on the 26th of August, 1857, Jones came to Washington to see Beller, and was then dissatisfied with the contract, and wished to cancel it, and offered to pay Beller for his expenses in the business; that he refused to accede to the request. He admits that another writing was drawn up by Mr. Thomas, of the firm of Young & Thomas, in accordance with his promise at Jones' house to have his agreement fairly drawn up; but denies that it was prepared under his direction, and that Jones was dissatisfied with it, but avers that it was drawn under the direction of Jones and himself, and that

7

Jones was satisfied with it as embodying the conditions of Beller's agreement.

And Beller insists that it is a full compliance with what he promised, and his promise was to give a bond with appropriate covenants to bind him to the performance of his agreement, touching the maintenance and schooling of the children, and paying their portions at the proper time.

That second writing is as follows:

" For and in consideration of certain lands and personal property embraced in a deed executed to me by Jonathan Jones, on the 17th day of August, A. D. 1857, and now of record in the clerk's office of the county court of Hempstead county, and State of Arkansas, I obligate myself to pay Jonathan Jones, for the benefit of Margaret A. Jones, Rennick R. Jones, William W. Jones, Albert T. Jones, and Susan E. Jones, children of the said Jonathan Jones, five hundred dollars each, when they severally arrive at lawful age, or marry, and as a further consideration for said lands, slaves and property aforesaid, I oblige myself to take the above children of the said Jonathan Jones, raise them, board and clothe them, and send them to school, in case they will go, until they secure an ordinary English education, and should either of said children die before arriving to man or womanhood, then I am to pay to those of them that are still living, such sum or sums as the said board, clothing, education, etc., would reasonably be worth from the time of their death until they would have arrived to the age aforesaid. I further oblige myself to let Margaret A. Jones have the negro girl named Frances and specified in said deed aforesaid, in lieu of the five hundred dollars as specified above. Given under my hand this 26th day of August, A. D. 1857.

A. T. BELLER."

Attest: J. W. THOMAS."

Beller admits that Jones submitted the last writing to counsel, and that it might have been pronounced informal and insufficient, without the proper covenants; but avers that it was sufficient, and in accordance with the stipulations of their trade,

except that in it he was not guarded from being bound for the maintenance and education of the children if they should refuse to live with him, which he avers was the agreement, and its omission was by mistake, and unnoticed by him.

He admits that Jones offered to return this second writing to him, but he would not take it, and that Jones left it on the floor, whence it was taken and kept by a clerk of Beller; that Jones again proposed to cancel the trade, and offered to give him the negro girl Ellen for so doing, but that he refused; but he denies that Jones demanded any bond with conditions for the performance of his part of the contract, or demanded any further bond. He denies that the property conveyed to him was worth more than four thousand dollars.

It is not proposed to detail the pleadings, or to refer to them further than has been done to ascertain clearly what the agreement was, how it was complied with by Beller, and what steps were taken by Jones for its cancellation.

No evidence was introduced by Jones so effective, none could be adduced more convincing, to show mental derangement, or want of natural sense, as is the agreement itself charged by him, and admitted by Beller to have been made. It is such a contract as no man in his senses, and with right feelings would have proposed; and it ought not to have been accepted. A court of chancery would never enforce the performance of a contract by which children were to be torn from their home and their only parent, and committed to the care of one who might have no feeling for them, and whose interest was to have them refuse to live with him, that he might be free from an onerous part of the agreement. No man could have expected otherwise than that the children would be dissatisfied, and that the daughter of mature years should determine for herself, as she did, to go home with her father, the first opportunity; and it must have been anticipated by all who knew the facts, and had even a conjecture of the feelings of a father, or of a man, that Jones, after the fit of the time was over, would direct his efforts to a destruction of the contract, and not to its fulfillment.

But it does not follow that a court of chancery will rescind a contract, because it would not be enforced. There must be imposition, fraud, or undue influence, with weakness of mind, to call into exercise the power of canceling the acts and contracts of beings who are supposed to take care of themselves; or suffer from their folly.

But for such a contract to stand, the defendant should show a compliance with his undertakings, a disposition to act in good faith, by doing to the utmost what he can, and what he ought to do, to calm the apprehensions, and quiet the suspicions so unnatural a condition must engender.

The bill and the answer agree that Beller was to give bond with appropriate covenants binding him to the performance of his agreements. He insists that he has done so by the execution of the writings, or rather of the last writing hereinbefore set forth. We do not think so, and only refer to the writing itself. We do not understand from the testimony of Mr. Thomas, that he drew the writing as in his judgment expressing the sense of any agreement made by the parties, but as a reduction to form, in a way that would not be prejudicial to Jones, of the first memorandum made by Beller himself. Thomas states that Jones received the paper drawn by him reluctantly, seemed to prefer the memorandum, was intent upon rescinding the contract. This accords with the bill so far as it shows his dissatisfaction with Beller, with what he had done, with what he would be likely to do, either in the preparation of papers, or in the fulfillment of his contract. His credulous confidence had given way, he did not now regard Beller as a friend and adviser, and he was fearful that every step would more deeply involve his property, himself and his children.

There appears to be no cause of complaint against Beller that Jones can establish, till after the delivery of the deed in Columbia county.

It is evident from both bill and answer, that Beller hurried off the children and the negroes from Jones' house, before he wished, or expected, or agreed for them to go.

And from the deposition of B. B. Jones, the tavern keeper in Washington, it appears that Beller had agreed to assist Jones in getting his daughters home from the tavern where Beller had put them, and when Jones was about to start, Beller, in a bustling way, informed Jones, that it was against his, Beller's, will for Jones to take his daughters away. This is proven in opposition to the denial of Beller's answer.

Before Beller left the house of Jones he asked his witness, Cleary, to encourage the old man Jones in the trade.

From the deposition of Cleary, it also seems that Beller was willing to let Jones depend upon the first memorandum, as Beller's undertaking to perform his part of the contract. For Cleary says, that when he, as justice of the peace, had received the acknowledgment of Jones and wife to the deed to Beller, the latter handed a paper to Jones, saying it was his bond, and that upon Jones remarking that he would have it recorded for the benefit of the children, Beller replied that if 'hat was to be done, he would give one in a little better form, when Jones came up to Washington. Neither of them read the paper at the time. Beller did not offer to do so, and did not explain its contents. Jones probably could not read, or at least understandingly, as we learn of its being read to him afterwards and of his immediate dissatisfaction, and going to Washington, and trying to have the trade rescinded.

When a permanent misunderstanding exists relative to the fulfillment of such a contract, as the one under consideration, involving such interests as it did on the part of Jones, and being executory and prospective, on the part of Beller, for sixteen years, it is evident that a rescission is the only adequate remedy; that a breach cannot be compensated in damages; that a court of chancery cannot execute the agreement for the parties.

Again, in October, 1857, after the second writing had been delivered to Jones by Beller, and Jones had legal advice thereon, that the paper did not provide for the performance of Beller's part of the agreement, Beller refused to give up the business which he must have known could result only in continuing and

increasing difference and mistrust; though it would seem that if his motive had been the accumulation of gain he would have been satisfied with what seems to be the extravagant compensation Jones offered him, to rescind the contract, that is, the negro Ellen, proven to have been worth seven hundred dollars.

All these facts and many others, scattered through the account of the case, though transpiring after the contract was made, assist to give character to it; and tend inevitably to the conclusion, that the arrangement made by the parties was an unsuccessful one, that it cannot be executed.

Jones, the plaintiff, is proven to be a credulous man, liable to be led away by those in whom he confided; he is shown to have had unlimited confidence in Beller, to have looked upon him as a friend, and as an adviser; at the time of the trade he was in great depression of spirits about his children, and domestic troubles; was completely under the influence of his wife, ready to promise and attempt any thing, if she would live with him, or agree to do so.

When he became suspicious of Beller, he still offered to compensate him for his trouble, he made a liberal proposition to induce him to rescind the contract, and upon the refusal of Beller to do this, demanded only his right to be secured, and to have Beller bound to the performance of his agreement.

Beller was inordinately hasty to get the negroes into his possession, did not act fairly about the papers by which he professed to be bound, from the delivery of the memorandum at Jones' house, to the rejection of the Thomas paper in his store: has placed himself in such a relation towards Jones, towards the children, to whom he was assuming the place of a parent, before the court by his answer, as to show that all the interests of the children, the objects of the trust, or of the contract, mental, pecuniary, and moral, will be best promoted by leaving this case where the Circuit Court sitting in chancery left it.

We do not think it essential, or profitable to collect for preservation in this opinion, the scattered but abundant facts and inferences afforded by the whole case, that induce the conclu-

sion to which the two courts have come, to which all fair minded, uninterested men must have come, as we think, upon an inspection of the record of the case. It is from all the circumstances of the case, as the influences operating upon Jones, the conduct of Beller after the contract was made, the inadequacy of the price, the unreasonableness of the contract, the character of the interests involved, the insufficiencies of any legal remedy, and from the whole case that this result is assumed.

We approve of everything contained in the decree appealed from, but this controversy ought to be ended; and to insure this, it should be added to the decree that neither party shall molest the other for anything growing out of the actions of replevin prosecuted by them respectively, and mentioned in the pleadings.

Let the decree be affirmed with costs, the replevin bonds in the suits mentioned be canceled, the legal proceedings of both parties involved in this suit perpetually suspended.