## PULASKI COUNTY *v.* HILL.

### Opinion delivered January 30, 1911.

1. TAXATION—REDEMPTION FROM TAX SALE.—The right of insane persons, minors and persons in confinement to redeem their lands from tax sales is not personal to them, but is impressed upon the land as an incident to the estate therein. (Page 453.)

2. JUDGMENT—CONCLUSIVENESS.—The test whether a particular point, question or right has been concluded by a former suit and judgment is whether such point, question or right was distinctly put in issue and determined by such suit and judgment. (Page 455.)

3. SAME—CONCLUSIVENESS.—A recovery of possession in ejectment by a tax purchaser will not preclude the defendant from thereafter suing to redeem the land from the tax sale. (Page 456.)

4. INSANITY—TEST.—The test whether a person is of sound mind is whether he has the mental capacity to transact ordinary business and to take care of and manage his property. (Page 456.)

5. EVIDENCE—OPINION OF NONEXPERT.—Opinions of nonexperts are competent to prove mental capacity or incapacity when the facts upon which the opinions are founded are disclosed. (Page 457.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. C. Marshall,* for appellants; *Harry Hale,* of counsel.

1. If Hill was insane as claimed, the right to redeem was personal to him, and did not descend to his widow and heirs. The strict letter of the statute controls, and no one has a right to redeem after two years unless specifically so provided. Kirby's Dig. § 7095; 51 Ark. 453; *Id.* 430; *Id.* 476; 17 Ark. 654; 52 Ark. 132; 66 Ark. 141; 77 Ark. 190; 70 Ark. 408; 92 Ala. 577; 94 Ala. 481; 84 Ark. 617.

2. The right to redeem after two years from the sale is barred by the judgment in ejectment. Kirby's Dig. § 5998; 46 Ark. 272; 49 Ark. 75; 70 Ark. 505; 71 Ark. 484; 85 Ark. 25; 108 Ind. 92.

3. Hill himself was not insane, and had no right to redeem after the expiration of two years. Insanity is a deranged or diseased condition of the mind. Mere weakness of mind or ignorance or want of education does not constitute insanity or incompetency. 22 Cyc. 1112, 1113. Even if a diseased condition of the mind be shown, it must go to the extent of incapacitating from exercising a reasonable judgment on the transactions in question or they will not be set aside. 17 Ark. 292; 70 Ark. 166; Wharton & Styles, Med. Jur. 1, 2; 83 Am. Dec. 514; 34 Wis. 117.

*George L. Basham,* for appellees.

1. The widow and heirs of Hill have the right to redeem. 35 Ia. 57; 49 Ark. 533; 39 Ark. 574; Cooley on Taxation 366; 27 Ia. 148; 11 Gray 410; 42 Ark. 215; 59 Ark. 147; 74 Ark. 347; 2 Blackwell, Tax Titles No. 706, No. 705; 53 Ark. 418; 74 Ark. 572; 49 Ark. 551.

2. The right of redemption was in no way affected or barred by the judgment in ejectment. A purchaser at a tax sale is entitled to a deed at the expiration of two years, and he becomes owner of the land in fee, which carries with it the right to possession, but he holds in fee subject to the right of redemption, where the original owner is at the time under one of the disabilities mentioned in the statute. 52 Ark. 132. See also 65 Ark. 129; 57 Ark. 198.

3. Hill was insane. The testimony leads to no other reasonable conclusion, and the chancellor so found. His finding on this point will not be disturbed. 44 Ark. 216; 73 Ark. 489; 75 Ark. 52; 2 Iredell 78; 27 Conn. 192; 46 Ill. 258; 76 Mo. 318; 22 Ark. 92, 95. As to what constitutes insanity, see 1 Clevenger, Med. Jur. 244, 252, 268, 284; 121 Ill. 376; 147 Ill. 370; 40 S. W. 483, 486; 84 Am. Dec. 97, 103; 44 N. H. 531; 97 Am. Dec. 592; 48 N. H. 133; 34 Wis. 117.

FRAUENTHAL, J. This was an action originally instituted for the purpose of removing certain deeds as clouds upon the plaintiffs' title to the land involved in this suit. Subsequently, the complaint was so amended that the sole remedy sought by this action was to redeem said land from a tax sale. The plaintiffs below were the widow and heirs of one John Hill, who acquired the land in controversy by purchase in 1878 and died in 1906. The land was sold on June 11, 1888, for the nonpayment of the taxes of 1887 to one R. W. Martin; and the defendants, who are appellants herein, claim title to the land under conveyance from his heirs. In 1891 the above tax sale of said land was confirmed by a decree of the chancery court, and in 1893 a complaint was filed by said John Hill to set aside said decree; and upon the hearing thereof it was dismissed for the want of equity. In September, 1892, the heirs of said R. W. Martin instituted an ejectment suit against said John Hill for the possession of said land, and in 1898 obtained a judgment for the recovery of the possession of all said land, except three and one-half acres which were adjudged to the Little Rock Granite Company, one of the appellants herein, and subsequently the heirs of R. W. Martin conveyed the land adjudged to them in said ejectment to the other appellants.

In the complaint it was alleged that John Hill was an insane person in 1887, the time when said land was forfeited for the nonpayment of taxes thereon, and that he labored under said disability continuously from that date until his said death in 1906, during all of which time he owned and resided upon said land. Deriving their right to the land as the widow and heirs of John Hill, the plaintiffs instituted this suit within one year after his death to redeem same from said above tax sale on the ground that he was laboring under the disability of insanity at

the date of said tax sale and up to the date of his death, and
that the right to redeem said land descended to them, which
they could enforce at any time within two years after his dis-
ability was removed by his death.

A great mass of testimony was taken relative to the question
as to whether or not John Hill was during said above time of
unsound mind; and upon the hearing of this case the chancellor
found that during said time he was insane and declared that his
heirs had the right to redeem said land from said tax sale. A
decree was entered by the chancery court in accordance with said
finding of fact and conclusion of law, and from that decree the
defendants, claiming under said tax title, have appealed to this
court.

The right of the plaintiffs to redeem the land from the
above tax sale, as a matter of law, depends upon whether or
not the right to redeem, which is by the statute granted to
insane persons, is descendible to their heirs. That statute, which
was in force at the time of the forfeiture, provided that "all
lands, city or town lots belonging to insane persons, minors or
persons in confinement and which have been, or may hereafter
be, sold for taxes may be redeemed within two years from and
after the expiration of such disability." Kirby's Digest, § 7095.
It is urged by counsel for defendants that this statutory right to
redeem is a mere personal privilege to be enjoyed solely by those
laboring under the disabilities mentioned in the statute and that
such privilege ceases with the death of such persons. But the
statute makes this right of redemption inhere in the land itself,
and does not grant it as a privilege personal only to the owner
who labors under the disability. The statute provides that the
land itself may be redeemed, and not simply that the owner
laboring under the disability may redeem it. The statute does
not confine the right to redeem to any person, but grants the
right as an interest running with the land for the period
mentioned therein after the expiration of the disability of the
owner. As is said in the case of *Neil* v. *Rozier*, 49 Ark. 551:
"This provision does not profess to make the right of redemption
personal to the minor who owned the land at the time of the
forfeiture. It is not specified in this or any other of the pro-
visions of the law governing this case that the power must be

exercised by the minor more than another whom it may concern at the time of redemption. It is not provided simply that the minor may redeem, but that the lands may be redeemed. The power is not appended to the person of the minor, but is impressed upon the land as an incident to the estate." The law casts upon the heir every right and interest in the land which his ancestor possessed at the time of his death; the interest and right therein descends to him just as it was in the ancestor, and can be maintained in his behalf just as it could have been asserted by the ancestor. The owner who labors under the disability mentioned in the statute could assert the right of redemption for the period therein named, and his death, while still laboring under such disability, would not abridge that right in his heir upon whom the law cast the estate and every right incident thereto. In the case of *McNamara* v. *Baird*, 72 Miss. 89, it was held that where an infant having until one year after majority to redeem land from a tax sale dies, his heir has the same right and time in which to redeem, and that giving to the heir this right to redeem is but giving effect to the right existing in the ancestor which by operation of law is cast upon the heir. It is urged, however, that in the case of *Bender* v. *Bean*, 52 Ark. 132, it is held that the right of redemption given by the statute to a minor is only a privilege personal to him. That was a case in which the minor was endeavoring to redeem, and the question involved therein was whether or not the holder of the tax title was liable for rents prior to the time that the redemption was effected in the manner provided by law. It was there decided only that the title to the land passed by virtue of the tax deed subject to be defeated by the redemption, and that until the minor did assert his right to redeem in the manner provided by law the holder of the tax title remained the owner of the land and could not be made to account for rents thereof. To the extent of asserting his right of redemption for himself while living it was held that the privilege was personal to the minor, but it did not hold that one standing by law in his place could not assert this right to redeem, or that his right of redemption was not vendible or descendible. But we think that this question is settled by the case of *Smith* v. *Thornton*, 74 Ark. 572. That was a suit seeking to redeem land forfeited and sold for the non-

payment of taxes. The plaintiff in that case inherited the land
from her son, who was insane at the time of the tax forfeiture and
up to the date of his death, and the action to redeem was com-
menced within two years after his death. In that case it was
held that the plaintiff did have the right to redeem the land
from the tax sale, and thereby it was necessarily ruled that the
right to redeem was descendible. It is true that in said case it
was also held that a decree of confirmation of said tax sale
would not cut off the right to redeem which was granted by
section 7095 of Kirby's Digest. But that decision also necessarily
held that not only was the owner, who was laboring under the
disability named in the statute, not cut off from the right to
redeem, but that others standing in his stead were not cut off,
and that by virtue of said statute the owner laboring under
such disability and the person succeeding to his right as heir
had the right to redeem for the period named therein. The evi-
dence adduced in the case at bar conclusively proves that John
Hill was the owner of the land at the time of the tax sale, and
if at that time he was insane and remained under that disability
to the date of his death, then his heirs had the right to redeem
the land from that tax sale within two years after his death.

It is urged that the question of the right to redeem the
land from the tax sale is concluded by the judgment which was
obtained in 1898 by the holder of the tax title against John Hill
in the ejectment suit which was instituted for the recovery of
this land. But that was a suit whose purpose was to recover
the possession of said land. The holder of the tax deed, if the
tax sale was valid, was entitled to the possession of the land as
against the owner, even though he was laboring under dis-
ability at the time of the tax sale. Until the owner made re-
demption in the manner prescribed by the law, the holder of the
tax title had the right of possession of the land. But the owner
laboring under the disability had the right to make such re-
demption at any time during the period named in the statute,
and he did not have to assert that right at the time of such eject-
ment suit, nor did he lose the right to assert it after such suit
and before the expiration of such period. *Bender* v. *Bean,* 52
Ark. 131; *Danenhauer* v. *Dawson,* 65 Ark. 134. His right to
redeem was not involved in the ejectment suit, and was not an

issue in that action. The true test of whether or not a particular point, question or right has been concluded by a former suit and judgment is whether such point, question or right was distinctly put in issue, or should have been put in issue, and was directly determined by such former suit and judgment. It is true that the judgment is also conclusive of "all matters properly belonging to the subject of the controversy and within the scope of the issues." It is not the recovery, but the matter actually alleged by the parties and upon which the recovery proceeds, which creates the estoppel, and the judgment does not conclude rights or matters which were not put in issue, and which it was not necessary to put in issue in the suit. *Cromwell* v. *County of Sac,* 94 U. S. 351; *Fourche River Lumber Co.* v. *Walker,* 96 Ark. 540; 23 Cyc. 1300.

In said ejectment suit the right of John Hill to redeem said land from the tax sale was not put in issue, nor was he called upon to put that right in issue. He had the right to make redemption after the recovery of said judgment, and until the right of redemption was asserted and perfected he was not required to put it in issue. The ejectment suit determined that the holder of the tax title was entitled to the possession of the land, but it did not determine that Hill was not entitled to redeem the land from the tax sale. Neither John Hill nor his privies in blood or estate were concluded by said judgment in ejectment from asserting and perfecting the right of redemption.

It is earnestly contended by counsel for defendants that the finding of the chancellor that John Hill was an insane person at the time of the tax sale or at any time thereafter is contrary to the weight of the testimony adduced upon the trial of this case. It is difficult to define with accuracy the limits of that mental incapacity which under the law renders one insane. An insane person is one who is of unsound mind, and our statute provides that a "person of unsound mind includes every person who is a lunatic, idiot or deranged." Kirby's Digest, § 7812.

But at last the law furnishes no definite enumeration of the mental powers and no exact measure by which to determine the degree of their exercise in order to decide whether or not an individual is of sound or unsound mind. There are numerous civil proceedings where insanity or mental incapacity may be

shown, and the rule for establishing the degree of the insanity necessarily depends upon the purpose for which the insanity is to be proved. It may be that the object of proving insanity is to annul a contract, or to defeat the execution of a will or to appoint a guardian to take charge of the estate of the insane person. The rule for establishing the degree of insanity in these various cases varies with the case. But the question in all such cases where incapacity arising from defect of the mind is alleged is, not not whether the mind is itself diseased or the person is afflicted with any particular form of insanity, but rather whether the powers of the mind have become so affected, by whatever cause, as to render him incapable of transacting business like the one in question. As a general rule, it may be stated that, in order to have that measure of capacity required by law to be of sound mind, a person must have capacity enough to comprehend and understand the nature and effect of the business he is doing; and where it is clearly made to appear that the mental incapacity and imbecility is of such a degree as to render the person unable to conduct the ordinary affairs of life and leaves him in a condition to be the victim of his infirmity, then such person is in contemplation of law not of sound mind. Weakness of understanding is not alone sufficient to show mental unsoundness if capacity remains to see things in their true relations and where the individual has a moderate comprehension of his immediate duties and of the value and use of his property. But, as is said by Marshall, J., in the case of *Prather* v. *Naylor,* 1 B. Monroe 244, the criterion in determining whether or not the individual is of sound mind "rests upon the question whether the individual is mentally competent of rational government of himself and his affairs." 1 Clevenger on Med. Jur. of Insanity, § 244; *Young* v. *Stevens,* 48 N. H. 133; In re *Storick,* 64 Mich. 685; *Hamrick* v. *Hamrick,* 134 Ind. 324; *Davis* v. *Cummings,* 60 Vt. 502; *Snyder* v. *Snyder,* 142 Ill. 60; *Kelly's Heirs* v. *McGuire,* 15 Ark. 555; *Beller* v. *Jones,* 22 Ark. 92. And the opinions of witnesses not expert are competent to prove mental capacity or incapacity when the facts or circumstances are disclosed upon which they found their opinions. *Beller* v. *Jones, supra; Davis* v. *Cummings, supra; Kilgore* v. *Cross,* 1 Fed. 578.

In the case at bar the matter involved related to the payment of taxes upon property. That was one of the matters attending the transaction of ordinary business. The object and purpose of proving insanity in this case would be to show that John Hill did not have the mental capacity to understand and appreciate the fact that the taxes should be paid upon his property; in other words, the true and proper test of whether or not he was of sound mind under the testimony and nature of this case was whether or not he had the mental capacity to transact ordinary business and to take care of and manage his property. If he was mentally incapable of understanding and acting rationally in the ordinary affairs of life and in the management of his property, then he was not of sound mind within the meaning of the statute granting him time until such disability should be removed in which to redeem his land from tax forfeiture.

We do not deem it desirable to set out in any detail the testimony relative to the mental condition of John Hill. The testimony discloses that almost from his infancy he was a mental imbecile, and on this account was the sport and plaything of his associates. He was not totally incapable of taking care of himself, but he was wholly incompetent on account of his mental unsoundness to rationally manage his affairs or to care for and protect his property in a rational manner. He did not understand the ordinary affairs of life in their true relations, and was unable to form correct conclusions as to them. He was mentally incapable of transacting business, or to comprehend the nature and effect of the business of paying or failing to pay taxes on his property. Upon an examination of all the evidence we feel a conviction that he did not have that mental capacity which is found in a sound mind, although he was not technically an idiot or lunatic. This was his mental condition at the time of said tax sale and continuously from that date to his death. He was therefore an insane person, within the meaning of the statute which granted to him the right to redeem his land from tax sale within the period named therein.

It is also urged by defendant that John Hill in 1889 executed a deed for a part of the land involved in this suit to one of the defendants who is a nonresident. This defendant has not appealed from the decree of the lower court. The plaintiffs

in their complaint alleged that John Hill was not of sound mind at the time of the alleged execution of this deed, and that it was therefore ineffective to convey title. The lower court found that John Hill was of unsound mind in 1887, and was of unsound mind continuously from that date until his death. He was therefore mentally incapable of executing a binding contract for the conveyance of his land at the time of the execution of this deed, and the chancellor entered a decree in accordance with that finding. We cannot say that this finding of the chancellor is against the preponderance of the evidence, and the defendant claiming under that deed has not appealed from this finding or decree. The defendants who have appealed cannot base any right upon an outstanding title in another which the chancellor has decreed is not valid and is without merit, and which decree we do not find cause to reverse.

Upon an examination of the whole case we think that the decree of the chancellor should be affirmed, and it is so ordered.