## DOYLE *v.* DAVIS.

### Opinion delivered February 12, 1917.

TRUSTS—CONSTRUCTIVE TRUST—PROPERTY TAKEN IN WIFE'S NAME—PROOF OF INTENTION.—Title to land was taken in the wife's name, the husband undertaking to prove by parol, a constructive trust in his favor, he having paid the purchase price. *Held*, the presumption that he intended a gift to his wife could be rebutted by evidence showing his intention to create a trust in his own favor, but such evidence must show facts that existed or took place antecedently or contemporaneously with the conveyance, or so soon thereafter as to form a part of the transaction.

Appeal from Faulkner Chancery Court; *Jordan Sellers*, Chancellor; affirmed.

*Brundidge & Neelly*, for appellants.

1. The sole question is whether or not the act of George Elder in causing the deed to be made to wife was intended as a gift or not. Elder could not buy again, in his own name, so he paid the purchase price and had the deed made in his wife's name and thereby a resulting trust was created. 117 Ark. 575; 40 *Id.* 62; 64 *Id.* 155; 71 *Id.* 373; 89 *Id.* 578; 103 *Id.* 273; 105 *Id.* 318; 169 U. S. 407; 98 Ark. 542. The presumption of a gift was overcome. 98 Ark. 542; 21 Cyc. 1297; 2 Pom., Eq. Jur., 1041.

*J. C. & Wm. J. Clark*, for appellees.

1. The law of this case is well settled. The burden was on appellants. 117 Ark. 575 does not apply. The presumption is that it was a gift to his wife. No trust is proven. All the acts of Elder show that Mrs. Elder was the absolute owner.

SMITH, J. The St. Louis, Iron Mountain & Southern Railway Company, by its deed dated November 29, 1892, conveyed to Bettie E. Elder, the lands here in controversy; but it is alleged by appellants that the conveyance was thus made to her, instead of to her husband, G. D. Elder, because he had contracted to purchase this land from the railway company, but had defaulted in his payments, and a rule of that company forbid the making of a second contract with a person who had defaulted in a prior one, and that he, therefore, had the contract for the purchase of the land made in the name of his wife, but that he advanced and furnished the consideration for the deed, intending all the while that the purchase should inure to his benefit.

Bettie Elder died January 26, 1894, leaving surviving her certain minor children, who were the plaintiffs below in the action brought to recover the possession of the property, and are the appellees here.

On October 6, 1901, G. D. Elder entered into a contract with one G. W. Hunt for a lease of the land,

with an option to purchase. The names of his children were recited as parties to this contract, although they did not sign it. Hunt assigned this contract to one D. M. Doyle, who later died, and his wife and administrator tendered performance of its unfinished conditions. Appellees, as heirs of their mother, declined to accept the tender of the unpaid purchase money and brought this suit to recover possession of the land.

Appellants, in their brief, say:

"The sole question we desire to raise upon this appeal is whether or not the act of G. D. Elder, causing the deed from the Iron Mountain Railway Company to be made to his wife, was intended as a gift or not."

Appellants contend that by the payment of the purchase money for the purpose of evading the rules of the railroad company there is a resulting trust in favor of the husband. The court below found otherwise, and this appeal has been prosecuted to reverse that decision.

Elder testified that he caused the deed to be made in his wife's name because the railroad company refused to make a deed to him, and that he paid the purchase money, and that he exercised ownership of and control over the land, but that it belonged to his wife. He also testified that he executed the lease contract of October 29, 1901, to convey his right of courtesy as husband of Bettie Elder, and that in executing this contract, he was representing himself as well as his children, although he did not sign their names to the contract, and no attempt is made to show that he had this authority.

On December 30, 1912, Elder deeded his courtesy right to his children.

There was testimony in regard to certain statements made by Elder after the death of his wife which tended to show his claim of the title to the land. But we think these self-serving statements can not be considered. The testimony shows that Elder never, at any time undertook to have asserted a trust in his favor, but in the lease under which appellants seeks to assert

title, Elder recited the names of his children as grantors. Elder was asked this question:

"State whether or not this land, after it was conveyed to Bettie Elder by this deed, was it your property, or the property of the plaintiffs in this case by inheritance from their mother after her death?"

He answered:

"One-half of that by inheritance, and the other deeded to them by me."

It is argued that this answer shows that Elder did not at any time consider his wife the sole owner. But this is not necessarily the case. The witness had a courtesy interest, and as he was sixty years old at the time of testifying, his curtesy at the time of his conveyance represented a large per cent. of the value of the land, and this answer does not necessarily conflict with his statement that the title to the land was in his wife.

At any rate, we think it can not be said that the chancellor's finding that the proof is insufficient to support a finding that there was a resulting trust is against the preponderance of the evidence.

In the case of *Colegrove* v. *Colegrove*, 89 Ark. 182, this court discussed the quantum of proof necessary to establish the existence of such a trust, and while it was there said that resulting trusts may be established by parol, such evidence is received with great caution, and the courts uniformly require the proof to be full, clear and convincing. The court quoted from the case of *Tillar* v. *Henry*, 75 Ark. 446, the following statement of the law:

"Constructive trusts may be proved by parol, but parol evidence is received with great caution, and the courts uniformly require the evidence to establish such trusts to be clear and satisfactory. Sometimes it is expressed that the 'evidence offered for this purpose must be of so positive a character as to leave no doubt of the fact.' and sometimes it is expressed as requiring the evidence to be 'full, clear and convincing,' and sometimes expressed as requiring it to be 'clearly established.' "

A number of cases decided by this court are there cited.

It is true Elder exercised the ordinary acts of ownership over the land, but he had the right to the possession and occupancy as a tenant by the courtesy. And in the case of *Poole* v. *Oliver*, 89 Ark. 580, it was said, "where a husband purchases land and procures the deed to be made to his wife, the presumption is that he intended it as a gift, and a trust does not result in his favor. This presumption may be rebutted by evidence of facts showing the husband's intention to have been that the wife should have the land as trustee, and not for her own benefit; but such facts must have existed or taken place antecedently or contemporaneously with the conveyance, or so soon thereafter as to form a part of the transaction. *Milner* v. *Freeman*, 40 Ark. 62; *Robinson* v. *Robinson*, 45 Ark. 484; *Chambers* v. *Michael*, 71 Ark. 373; *Womack* v. *Womack*, 73 Ark. 281; *O'Hair* v. *O'Hair*, 76 Ark. 389," and the same case is authority for the statement that the subsequent use and occupation of the husband, of itself, is referable to his natural desire to manage and care for his wife's property.

We think, when this test is applied to the evidence in this case, that we should not overturn a title which has been outstanding for many years in the name of the heirs of Mrs. Elder, especially in view of the fact that she has long been dead and many years have expired since the original purchase of the land.

The decree of the court below is, therefore, affirmed.