SEEMAN *v.* HILDERBRAND.

4-4956

Opinion delivered February 21, 1938.

*Morrow & Covington,* for appellant.

*Hays & Wait,* for appellees.

BAKER, J. Fred Seeman, the appellant here, is the son of John Seeman. His suit was directed at N. S. Hilderbrand, having as its object cancellation of a deed executed to Hilderbrand by John Seeman and his wife. Ed Seeman, Minnie Seeman Wilson and Lula Huckabee are brother and sisters of appellant, Fred Seeman. Cromer was made a defendant in this suit because he had bought timber from Hilderbrand and was removing it from the lands deeded by John Seeman to Hilderbrand. When Hilderbrand was a child, five or six years old, his mother, a widow, married John Seeman. Hilderbrand has grown up and in the last few years, it is said, had been contributing to the support of his stepfather and his mother.

On the 29th of May, 1935, John Seeman went with the appellee, his stepson, to Russellville where he had the clerk prepare a deed conveying 120 acres of land that he owned in Pope county to his stepson. The deed was not executed at Russellville, but was taken home where it was signed and acknowledged later before a justice of the peace, and was thereafter duly recorded on the 31st day of May, 1935. The consideration mentioned in the deed was $300.

The appellant alleged in his complaint that his father was mentally incapacitated to such an extent that he was unable to execute a valid conveyance; that he did not know the consequence of his acts, and that the consideration was never paid. He made his brother and two sisters parties to the proceeding because they refused to join him in the complaint. The case was presented upon oral evidence which was duly preserved by order of the court as depositions, and this proof is presented here in an attempt to reverse the decree of the chancery court.

We will not set forth in detail all this testimony, but the essential portion thereof may be summarized in a very short form.

Mrs. Vera Munger testified that John Seeman was the average childish person. Claude Boley expressed also an opinion that he was not crazy. Ed Seeman testified that his father seemed like the same man. George Phillips expressed an opinion that he was mentally capable at times, sometimes he was right and sometimes not right. William Munger said that Seeman sometimes acted queer and talked queer, was childish and wanted to go back to Kansas. Leonard Light noticed that Seeman seemed like he was childish and forgetful, but seemed like, in a way, he was mentally capable of transacting business. Lillie Mounds also testified. She would not say whether Seeman was mentally competent or not, but did not think he was.

The appellant himself testified as to the mental condition of his father, saying that his mental condition was

bad on the 29th day of May, 1935, and that it had been bad·for several years.

This is a fair statement of the effect of all the testimony. No one of these witnesses, including the appellant himself was an expert, and did not attempt to qualify as one able to express an opinion, without giving or showing facts upon which the opinion might be based. In regard to those witnesses who are not experts, and who have expressed opinions this court has said:

"When a person's mental condition or capacity is in question, the opinions of witnesses who are not experts as to such capacity are only admissible in evidence when taken in connection with the facts upon which such opinions are based. Before such evidence can be admissible the specific facts upon which the opinions are based must first be stated by the witnesses, or their testimony must show that such intimate and close relations have existed between the party alleged to be insane and themselves as fairly to lead to the conclusion that their opinions will be justified by their opportunities for observing the party." *Shaeffer* v. *State,* 61 Ark. 241, 32 S. W. 679.

We think, therefore, that, under the rule that chancery decrees must be considered as having been founded upon proper and competent evidence, there was very little testimony to be considered in the foregoing statements of the various witnesses. In fact, Fred Seeman is the only one who expressed a positive opinion in regard to his father's mental condition. He was the plaintiff, directly interested in the results, and, of course, his testimony will not be taken as undisputed. *French* v. *Browning,* 187 Ark. 996, 63 S. W. 2d 647.

It was developed by appellant's own witness, Ed Seeman, that Hilderbrand had sent his father and mother money; that he had fixed up the house on the 120 acres involved in litigation, wherein they expected to live and it was alleged in his answer that there was an understanding between Hilderbrand and his stepfather, John Seeman, as a part of the consideration for the deed, that he would take care of Seeman and his wife, the mother of Hilderbrand, as long as they lived, and after such agree-

ment was made the property was conveyed to him. But it was not necessary that these facts be established by proof, unless there was some reason appearing from the evidence offered on behalf of the appellant, as plaintiff, sufficient to warrant action of the court if such evidence were undisputed.

We do not think the proof developed warranted any such action on the part of the court.

Appellant cites the case of *Beller* v. *Jones*, 22 Ark. 92, to the effect that "We hold them to be competent to give such opinion as ought to be respected who, from habits of daily or common intercourse with, or observation of appellee could make an intelligent comparison of his mental manifestation with his conduct when he was admitted to enjoy the full use of his natural faculties." This declaration has in no wise been changed or overruled so far as we are now advised. Appellant has not met that burden.

We have just called attention, however, to the fact that the appellant did not offer any proof of facts or conduct on the part of John Seeman, upon which any of the non-expert witnesses may have based any opinions expressed. Mental weakness alone may not be sufficient to render a contract a voidable one, but when such condition has been established, together with such facts or unfairness in the contract, as would tend to prove that fraud had been practiced or consummated, the circumstances would justify a decree declaring the contract ineffectual. *Cain* v. *Mitchell*, 179 Ark. 556, 17 S. W. 2d 282.

We have recently had occasion to review and make application of the authorities controlling in cases similar to this one. *Puryear* v. *Puryear*, 192 Ark. 692, 94 S. W. 2d 695; *Pernot* v. *King*, 194 Ark. 896, 110 S. W. 2d 539.

Appellant argues also that Hilderbrand, after the death of the grantor, made an offer to divide proceeds of timber sales with all the parties, if by doing so he could prevent litigation or have peace among them; that this fact is a clear indication of the inadequacy of the consideration, or evidence of fraud, which in itself would justify the action of the court in the cancellation.

We do not think so. In fact, under the conditions prevailing when this offer is said to have been made, we are rather inclined to think that the testimony was not competent for any purpose. It was evidently an effort to compromise the contention or dispute as to property rights to avoid litigation.

The decree was correct. Affirmed.