HILL *v.* HOPKINS.

4-5569                                    133 S. W. 2d 634

Opinion delivered October 16, 1939.

1050

W. H. McClellan, for appellant.

Ernest Briner, for appellee.

BAKER, J. The same subject-matter of this controversy was before this court upon appeal, and was then decided in favor of the appellee. *Hill* v. *Hopkins,* 195 Ark. 594, 113 S. W. 2d 482. In this first case Mrs. Hill, the wife of the present appellant, was a party and for that reason the rules of *res adjudicata* are not strictly applicable. Hill filed this suit alleging that he was the owner of this land although the legal title was held in the name of his wife, Mrs. L. G. C. Hill; that he had bought and paid for the land and took title in his wife's name, not intending that she should take actual or real title, but that she should hold only as trustee, and that this arrangement was so understood by both of them. He further alleged that his wife had traded the land to Hopkins for an automobile worth $50 and he offered to repay to Hopkins the $50, alleged value of the property, with interest, and sought a rescision, alleging that Hopkins had fraudulently represented the automobile and its value, stating that it was a 1931 model, when it was in fact a 1929 model and of much less value than it would have been had it been the model of the year as represented.

All the allegations constituting the alleged fraud were denied by the defendant, the appellee here. Upon trial of the case the court dismissed the complaint, and it is from that decree that this appeal is prosecuted.

The main facts are not substantially in dispute. The effect of these facts, or the value of this testimony is considered from widely divergent angles by the parties. There is no controversy about the fact that the appellant here purchased this land, paid for it with his own money; that is to say he borrowed some money and used that at the time of the purchase and in perfecting his title. He perhaps used money that he had received as a pensioner. His first effort toward procuring title to this land was made in buying whatever interest was held by some improvement district. He learned then that it would cost less to redeem the land from a tax forfeiture to the state than it would to buy the original title from the record owner and redeem from the tax forfeiture. To do this he borrowed some money and went with his lender and redeemed the land. All these proceedings were done in the name of his wife, Mrs. L. G. C. Hill.

It is alleged, and some proof was offered tending to show that Hill, by reason of some mental defect, had had a guardian appointed many years ago and finally his last guardian, and who was then still acting, had been appointed by the probate court of Grant county. Several lay witnesses testified that they did not think that Hill was sound mentally, giving such reasons as they had observed. One of the witnesses was a young woman who had lived in the home of Hill and who testified that he was easy to anger and that he acted peculiar. Two witnesses, who had served as nurses or attendants and having some years of experience with those who are mentally afflicted, expressed their opinions that he, Hill, was not mentally capable of transacting business. One other witness, the man who had gone with Hill to help him in redeeming the land, and who advised him to take the title in his wife's name, was the same one who at that time loaned him money to buy, or redeem this property from

the state. There is some evidence, indeed, and appellant's admissions are abundant, as argued in his brief, to the effect that he acted much as other men do, clearing up land, contracting with people to do labor, buying property and trading, though there is no evidence that he ever took title to any tract of real estate in his own name. This appears also from evidence offered from former trial. In truth, it appears that he, and those who advised him at the time, were under the impression that because he was living under a guardianship he was incapable of holding title to real property. Practically the only evidence of the alleged fraud in this case is an admission on the part of Hopkins that at the time he bought the automobile that he had traded for the land, he had paid $30 for it. He testified, however, that it was worth $300. There is evidence that the land in question was worth from $300 to $500. Hopkins testified that when he traded the automobile for the land he traded with both Mr. and Mrs. Hill. Both of them signed and acknowledged the deed. Hill does not deny that fact, but relies upon the proposition that at that particular time his guardian had not been discharged and therefore, because of the guardianship pending in the probate court of Grant county, the conveyance made by him was illegal and void.

Hopkins pleads that he was an innocent purchaser of this property and did not know of the alleged incompetency of Hill; that the title was in Mrs. L. G. C. Hill, and that he had no knowledge of the alleged fact that she was a trustee. These facts seem to be established by the record in this case. Even though Hopkins had had notice that the land was purchased with Hill's money that would not be notice that a trust was created. The duty of the husband to make suitable provisions for the support and maintenance of his wife raises a legal presumption that the conveyance was a gift, and that she takes as a donee, rather than a trustee. *Keith* v. *Wheeler,* 105 Ark. 318, 151 S. W. 284; *Wood* v. *Wood,* 116 Ark. 142, 172 S. W. 860; *Doyle* v. *Davis,* 127 Ark. 302, 192 S. W. 229; *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 876. Numerous other citations are available.

But even if the deed should have shown merely that she took "as trustee," she still would have had capacity to have conveyed the title. Section 1813, Pope's Digest.

The appellee offered in evidence the testimony given by both Mr. and Mrs. Hill in the trial of the former case, and this evidence was received and heard over the objection of the appellant, who now urges that it was not competent, except for the purposes of contradiction, and since it could not have been used for that purpose for the reason that they did not testify upon this trial, its presentation was error. We do not think so. One of the matters pleaded by the appellee is to the effect that if this conveyance was procured by Hill to be made to his wife, Hill ratified and confirmed this conveyance as giving her the actual or absolute title to this property.

The effect of the testimony taken in the former case, and it was offered upon this trial, was that Mrs. Hill was the owner of this land and that she refused to trade with Hopkins, but directed him to trade with her husband, the appellant here. Hill, in that case, swore that his wife was the owner of the land and that he acted, in making this trade, solely as her agent, so we find him at that time asserting that his wife was the owner of the land. He seeks to avoid the effect of this by declaring that he was still laboring under the disability of mental incapacity and that she was merely a trustee The effect of such insistence is contradictory. In fact, the situation is rather an incongruous one. If we take Mr. Hill's statement as being absolutely true, that he was mentally incapable of making the deed and that was the reason why title was taken in his wife's name, and that she was merely a trustee during all this period of time in which he and his wife were in possession of the land, we are driven to these conclusions: first, that if the wife was a trustee, she was one from the date of the purchase of the land until she had conveyed it; second, that Hopkins had no notice of this trust in regard to the property; third, that when Mrs. Hill transferred the property she was still acting as trustee and she conveyed whatever title she held, even as a trustee. If Hill were

capable of creating a trust by this transaction he was capable of conveying.

As above stated, Mr. Hill seeks to avoid the effect of his declaration that his wife was the owner by alleging the continuance of his mental incapacity, until later on when he procured his guardian to be discharged, and after the discharge of his guardian he was then free to assert the invalidity of his acts, and seek to establish a trust and recover the land. The error of this conclusion on his part arises out of the well known fact that the mere appointment of a guardian or continuance of the guardianship is not conclusive evidence of such mental incapacity as would make void all acts of the ward. The unreasonableness of this situation appears in this very case wherein Hill sought out, while he still had a guardian acting for him, this particular tract of land. He exercised the ordinary trader's perspicacity in finding the most advantageous method of purchasing. He borrowed money from one who was later his witness, who was willing to testify to the mental incapacity of his favored friend. He hired men to work, paying them for their labors. He himself did a considerable amount of work in clearing up and otherwise improving the property. He was the same trader who had bought this land, that was traded for the car and used it until he had practically worn it out. He had shown little consideration or care for this car after he had it in possession, as the testimony in the former case shows that he had destroyed much of the upholstering in it by hauling wild hogs in it. He had lived much as other men do without any real or apparent evidence of mental incapacity. True, he may have been easy to anger and may have frequently shown his angry moods. He may have been peculiar; but we submit that there is no evidence in this entire record indicating mental incapacity, except the probate record showing the appointment of a guardian and this is not conclusive. It is *prima facie* evidence. It had been frequently so held. 14 R. C. L. 621, § 73.

It has also been held, and seems to be the weight of authority, that the testimony of lay witnesses in regard

to mental incapacity, is of no value, unless the witness details the facts upon which his opinion is formed. Of course, then, the opinions take their values from the facts proven, rather than from the declaration of them. *Pulaski Co.* v. *Hill,* 97 Ark. 450, 134 S. W. 973; *Beller* v. *Jones,* 22 Ark. 92; *Puryear* v. *Puryear,* 192 Ark. 692, 94 S. W. 2d 695; *Pernot* v. *King,* 194 Ark. 896, 110 S. W. 2d 539; *Seeman* v. *Hilderbrand,* 195 Ark. 677, 113 S. W. 2d 724.

It may be true that there was fraud. It will not be presumed. It was not proven. No error appears. Affirmed.