THE W. T. RAWLEIGH COMPANY *v.* McATEER.

4-6632                                        158 S. W. 2d 701

Opinion delivered February 16, 1942.

*R. S. Wilson,* for appellant.

*John P. Vesey,* for appellee.

GREENHAW, J. Appellant instituted suit in the Nevada circuit court against J. R. McAteer as principal and J. C. Ingram and D. H. McAteer as sureties on a bond executed to appellant indemnifying it against any loss by reason of selling and supplying merchandise to J. R. McAteer under contract with him. An amendment to the complaint was filed, stating that J. R. McAteer had been adjudged incompetent by the probate court of Howard county, and making his wife and guardian, Ella A. McAteer, a party to the suit.

It was alleged that under the terms of the contract between appellant and J. R. McAteer he was indebted to appellant in the sum of $605.78 for merchandise sold and delivered to him. The accuracy of the account was not questioned, the suit being defended on the theory that the principal, J. R. McAteer, was incompetent at the time the contract and bond were entered into.

The contract and bond were executed on January 2, 1937. On February 3, 1938, more than a year after the contract was executed, the debtor, J. R. McAteer, was adjudged incompetent. He was released from the State Hospital for Nervous Diseases on April 3, 1938, and this suit was instituted in January, 1939.

No answer was filed for the bondsman, J. C. Ingram, and judgment by default was rendered against him. It was contended on behalf of the other bondsman, D. H. McAteer, that if the principal was incompetent and his contract was invalid by reason thereof, the bondsmen would not be liable. This case was tried on that theory and the lower court so instructed the jury.

We have reached the conclusion that there was no substantial evidence showing that, on the date of their execution, J. R. McAteer was mentally incompetent to execute the contract and bond sued on herein. The court, therefore, erred in submitting that question to the jury.

No medical testimony was given concerning the mental condition of J. R. McAteer. A few laymen testified concerning some of his peculiarities, but none of them testified to facts showing that he was mentally incompetent to transact business when the contract was executed. His wife, Ella A. McAteer, had better opportunities to observe him than the other witnesses, and she did not testify that he was mentally incompetent to transact business on the date he executed the contract sued on herein. Among other things, she stated:

"Q. You spoke about noticing peculiarities about Mr. McAteer as early as 1935, you didn't notice those things all the time? A. No, sir. Q. Just at times you would see peculiar actions and at other times he was perfectly normal? A. He seemed to be. Q. How long did that situation continue? Up until about the time he was committed to the hospital? A. Yes, he was gradually getting worse all the time. Q. Still, all along at times he would be normal and at times he would seem to be unbalanced? A. Yes, sir. Q. Apparently he is all right now, with the exception that he says he can't remember? A. Well, his memory isn't good and he is

nervous yet. Q. He has been legally restored to competency and you no longer act as his guardian? A. No, sir. Q. He transacts his own business? A. Yes, sir.''

J. R. McAteer himself testified with reference to the account sued on, but did not dispute the accuracy of the amount sought to be recovered. He further testified that he continued to work until the end of 1937, with the exception of some loss of time, and that: ''Through the fall I was sick quite a bit. My memory is not as good now as at one time. I am familiar with all the facts and circumstances concerning my work and accounts, as I hear it called, but I don't have the recollection I did have.''

In the case of *Pulaski County* v. *Hill,* 97 Ark. 450, 134 S. W. 973, this court said: ''But at last the law furnishes no definite enumeration of the mental powers and no exact measure by which to determine the degree of their exercise in order to decide whether or not an individual is of sound or unsound mind. . . . As a general rule, it may be stated that, in order to have that measure of capacity required by law to be of sound mind, a person must have capacity enough to comprehend and understand the nature and effect of the business he is doing; and where it is clearly made to appear that the mental incapacity and imbecility is of such a degree as to render the person unable to conduct the ordinary affairs of life and leaves him in a condition to be the victim of his infirmity, then such person is in contemplation of law not of sound mind. Weakness of understanding is not alone sufficient to show mental unsoundness if capacity remains to see things in their true relations and where the individual has a moderate comprehension of his immediate duties and of the value and use of his property.''

Having reached the conclusion that there was no substantial evidence of the mental incapacity of J. R. McAteer to submit to the jury, and that he was therefore liable upon his contract and bond sued on herein, it is unnecessary to discuss at length the defense of the surety, D. H. McAteer, that if the principal is mentally incompetent, and, therefore, relieved of liability, the surety is also

relieved. However, we are unable to agree with this contention, and it was error to so instruct the jury.

"Although the principal lacked capacity to enter into the contract made, the surety is bound nevertheless, as he may be said to warrant the competency of the principal. Hence the surety for an infant principal is bound unless the principal disaffirms his contract on attaining majority; but even in such a case the surety remains liable if the creditor is not placed in *statu quo* by a return of the consideration. So a surety is liable, although the contract is void as to a corporate principal because *ultra vires*, or because the principal is a married woman, or other disqualified or incapacitated person." 32 Cyc. 27, par. 6; 50 C. J. 97. See, also, 21 R. C. L. 995, par. 44; *Maledon* v. *LeFlore*, 62 Ark. 387, 35 S. W. 1102.

The judgment is, therefore, reversed, and since the cause seems to have been fully developed, judgment is hereby rendered in favor of appellant against appellees for $605.78, the amount sued for, together with interest at the rate of six per cent. per annum from the date of the filing of this suit, and with all costs accruing in the lower court and on appeal.