## Dobbs v. Dobbs.

5-728 · 282 S. W. 2d 812

Opinion delivered October 17, 1955.

E. H. LaMore and Herrn Northcutt, for appellant.

Green & Green and Oscar E. Ellis, for appellee.

George Rose Smith, J. In December, 1953, the appellant came to Arkansas from Missouri. Some three months later he filed suit for divorce in the Fulton Chancery Court, the service of process upon the appellee being by warning order. At the term beginning in April, 1954, the court entered a default decree granting the divorce. During the same term of court the appellee filed a motion to set aside the decree, upon the ground that the appellant was not a resident of Arkansas. This motion was not presented to the court until the October term, at which time the chancellor, after hearing additional testimony, found that the appellant is not a *bona*

*fide* resident of Arkansas and that the decree should be set aside as having been obtained by fraud on the court. This appeal is from the order vacating the original decree.

Although the appellee's motion was filed during the April term of court, the court's discretionary power to grant the motion ended with the lapse of the term and could not be revived even by consent. *Mayor & Aldermen of Little Rock* v. *Bullock,* 6 Ark. 282; *Brady* v. *Hamlett,* 33 Ark. 105; *Ingram* v. *Wood,* 172 Ark. 226, 288 S. W. 393. Hence the question is whether there is a sufficient showing of fraud on the court to warrant the vacation of the decree under the statute that applies after the expiration of the term. Ark. Stats. 1947, § 29-506. It may be added that, since the appellee did not enter her appearance prior to the rendition of the divorce decree, the issue of residence is not *res judicata* and may **be re-examined.** *Anderson* v. *Anderson,* 223 Ark. 571, 267 S. W. 2d 316.

The proof follows a pattern familiar in cases of this kind. Dobbs had first sought to obtain a divorce in Missouri. On the day after his petition there was denied he came to Arkansas and undertook the establishment of residence in this state. At the time of the October hearing Dobbs had been in Arkansas for a little more than ten months. In that period he had started a salvage business (which took him frequently back to Missouri), had assessed and paid taxes in Arkansas, and had begun the construction of a home on land he had bought. Several witnesses corroborate the fact of Dobbs' presence in the community. Although some of these matters occurred after the entry of the decree in April, they are not without relevance to the question of whether Dobbs came to Arkansas with the intention of making it his domicile.

On the other hand, Dobbs admittedly migrated to Arkansas immediately after his complaint for divorce had been dismissed in Missouri. This is a circumstance to be considered, although it is not necessarily fatal to the acquisition of an Arkansas domicile. *Wicker* v.

*Wicker,* 223 Ark. 879, 269 S. W. 2d 311. It is also shown that during most of his stay in Arkansas Dobbs has been living in a tent pitched on the site where he is assertedly building a house.

In our opinion the record fails to establish the charge of fraud on the court. It is true that one who obtains a divorce upon perjured testimony as to residence commits a fraud on the court. *Vanness* v. *Vanness,* 128 Ark. 543, 194 S. W. 498; *Murphy* v. *Murphy,* 200 Ark. 458, 140 S. W. 2d 416. But in those cases the plaintiff was guilty of conscious and deliberate perjury, his testimony as to physical residence having been wholly untrue. That is not the situation in the case at bar. Too, in each of the above cases the husband had concealed his wife's true address, so that she failed to receive notice of the suit. Here Dobbs supplied the appellee's correct address; her failure to receive notice was due to her own refusal to accept the registered letter mailed to her by the attorney *ad litem.*

In this case it is fair to say that the evidence as to residence is evenly balanced or very nearly so. If this were simply an appeal from a decree denying the appellant's request for a divorce it might well be said that the chancellor's decision was not clearly against the weight of the evidence. But that is not the case before us. The appellee's present burden of proof is not merely that of disputing the assertion of residence; she must go a step farther by showing that the decree was obtained by fraud. Reasons of public policy make it desirable that decrees affecting the marital status have a high degree of stability. "There are excellent reasons why judgments in matrimonial causes, whether of nullity, dissolution or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with and after it so many collateral rights and interests of third persons that uncertainty and fluctuation in it would be greatly detrimental to the public." *Corney* v. *Corney,* 97 Ark. 117, 133 S. W. 813. We are unwilling to hold that fraud on the court is established by mere proof that the issue of

residence is a closely disputed question of fact that might be resolved either way. Under such a rule every uncontested divorce case would be subject to trial *de novo* for the indefinite future. This appellant undoubtedly made *prima facie* proof of residence. There being little if any evidence of deliberate perjury, wrongful concealment of the defendant's whereabouts, or other conduct by which the decree was fraudulently procured, the original decree should have been allowed to stand.

Reversed.