JACKSON, EXECUTOR *v.* BOWMAN, GUARDIAN.

5-1009                                                294 S. W. 2d 344

Opinion delivered October 8, 1956.

[Rehearing denied November 12, 1956.]

*A. M. Coates* and *John C. Sheffield,* for appellant.

*David Solomon, Jr.,* and *D. S. Heslep,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is a suit by an insane widow to set aside a decree of divorce granted her husband shortly before his death in January, 1954.

W. T. Jackson and Arwilda Bowman were married May 12, 1931 in Phillips County, Arkansas, where they lived together until she became mentally incompetent and was committed to the State Hospital on March 31, 1937. Jackson was duly appointed and served as guardian of his wife's person and estate until shortly before his death at the age of 72 and no children were born to the marriage. W. T. Jackson was a farmer and owned lands jointly with his brother, C. J. Jackson, in whose home he lived for several years prior to his own marriage. After his wife was committed to the State Hospital he continued to reside in his own home and carry on his farming operations until July, 1953, when he became

ill and was removed to the home of his brother, C. J. Jackson, in West Helena, Arkansas. His physician testified that he was then suffering from "cerebral arteriosclerosis" and "senile dementia" and was mentally incapacitated but perhaps had lucid intervals.

Upon moving to the C. J. Jackson home, and prior thereto, legal advice was sought to effect some arrangement whereby all of W. T. Jackson's property at his death would go to his brother and none to his insane wife, or her people, except that she would be properly maintained the balance of her life. On July 21, 1953, W. T. Jackson filed suit for divorce on the ground of incurable insanity of his wife. Although the appointment of a guardian ad litem for the insane wife was asked for in the complaint none was appointed and no pleadings were filed in her behalf. A summons for Arwilda Jackson directed to the sheriff of Pulaski County was served upon the superintendent of the State Hospital. On October 23, 1953, the depositions of the superintendent and another physician at the hospital were taken to the effect that Arwilda Jackson was permanently insane and that the estimated cost of her maintenance at the hospital was $45 monthly.

On July 30, 1953, W. T. Jackson executed a will by mark leaving all his property to his brother, C. J. Jackson, on condition that the latter, or his heirs, make proper provision for the maintenance of Arwilda Jackson as long as she lived. On August 1, 1953, W. T. Jackson was taken to a hospital in Memphis, Tenn., where he remained three days and an attending physician was of the opinion that he was then mentally incompetent.

On December 3, 1953, a decree was entered in the divorce suit brought by W. T. Jackson granting him a divorce on the ground of incurable insanity of his wife and directing him to pay the State Hospital $45 monthly for her support and maintenance. On December 28, 1953, C. J. Jackson filed a petition in the Phillips Probate Court seeking his appointment as guardian of the person and estate of W. T. Jackson due to the latter's mental incompetency and the petition was granted on January

4, 1954. The bond of C. J. Jackson as such guardian was dated December 4, 1953. W. T. Jackson died January 30, 1954.

Ardelia Bowman, a niece of Arwilda Jackson, filed a petition in the Phillips Probate Court on February 22, 1954, asking that she be appointed guardian of the person and estate of her aunt and the petition was granted, after due notice, on March 8, 1954. The instant suit to set aside the divorce decree entered December 3, 1953, was then filed by Ardelia Bowman as such guardian on March 10, 1954. The verified petition alleged invalidity of the divorce decree because no guardian ad litem was appointed for the insane defendant and the testimony of a Phillips County physician was not produced as required by statute. It was further alleged that W. T. Jackson was himself insane and such fact concealed from the court when the decree was entered and that the defendant wife, therefore, had a meritorious defense to the suit. A copy of the verified petition was served on the attorney of record for W. T. Jackson and upon appellant, C. J. Jackson, as executor of the estate of his deceased brother.

After motions to quash service and dismiss the guardian's petition to set aside the divorce decree were filed by appellant, as executor, and overruled by the trial court, a response was filed in which the allegations of the petition were denied. The court's jurisdiction to entertain the suit was also challenged because of the lapse of the term in which the decree was rendered, and it was alleged that the divorce proceedings were "in substantial compliance with the statutes." Trial resulted in the entrance of a decree on September 28, 1955, setting aside and vacating the divorce decree of December 3, 1953. In said decree the court found:

"1. That the petition to vacate and set aside the decree of this Court of December 3, 1953 wherein W. T. Jackson was granted a divorce from the defendant, Arwilda Jackson should be granted as the same is voidable if not absolutely void for the reason that the defendant Arwilda Jackson at the time the suit was filed, and for

many years prior thereto, and was on December 3, 1953, when the decree of divorce was granted, an incurable and permanently insane person, and that a guardian ad litem was not appointed by the Court for the said insane defendant to defend said cause on her behalf.

"2. That the trial on December 3, 1953 was in effect an *ex parte* proceeding in that no defense of any kind was made for the incompetent defendant, Arwilda Jackson, although the plaintiff, W. T. Jackson, at that time was her legal guardian; that even though service of summons was had, upon the Superintendent of the State Hospital, where the defendant was confined and had been confined for many years, the defendant had no guardian ad litem appointed by the court to defend the action for her and the decree was entered against the defendant as though by default."

Appellant first contends the chancellor erred in refusing to quash the service of process in the instant suit which was had by serving copies of the petition upon him as executor of his deceased brother's estate and also upon the attorney of record for W. T. Jackson in the divorce proceedings. On this point appellant argues that, as executor, he had no interest in the divorce suit by his brother and that proceedings to vacate a divorce decree simply will not lie after the death of one of the parties. This presents an interesting question upon which there appears to be some division of authority. There is considerable support, especially in earlier cases, for the broad rule that the courts have no power to vacate a default judgment or decree of divorce after the death of the plaintiff. However the weight of authority, and all the later cases, support the general rule that the court has the power to set aside a default decree of divorce even after the death of one of the parties in a proceeding instituted by the survivor, if property interests of the survivor are affected by the default decree. 17 Am. Jur., Divorce and Separation, Sec. 462; 157 A. L. R. 53; 22 A. L. R. 2d 1323. We concur in this view. The property interests of the insane survivor here are vitally affected by the default decree. Also the service upon C. J. Jackson, who was executor of the estate of W. T. Jack-

.son and apparently his sole heir at law, and upon the attorney of record for W. T. Jackson in the original divorce action, constituted sufficient and proper notice to allow the trial court to act on the motion to vacate. This was the effect of our holding in *State* v. *West,* 160 Ark. 413, 254 S. W. 828.

The next contention for reversal is that the trial court lost jurisdiction to hear the instant suit upon the expiration of the term at which the challenged decree was rendered. Appellant relies upon *Dobbs* v. *Dobbs,* 225 Ark. 397, 282 S. W. 2d 812. We there held that the court's inherent discretionary power to grant a motion to set aside a default divorce decree filed during the same term of the court ended with the lapse of the term, in the absence of sufficient proof of a ground to vacate it under the statute applicable after the expiration of the term. Ark. Stats. Sec. 29-506. So here, the principal issue is whether appellee has made a case for vacation of the 1953 divorce decree under said statute. In this connection we have held that a judgment by default may be set aside under the 7th subdivision of Sec. 29-506, *supra,* where the defendant was not served with summons. This subdivision of the statute authorizes the vacation of a judgment for "unavoidable casualty or misfortune preventing the party from appearing or defending." See *Jermany* v. *Hartsell,* 214 Ark. 407, 216 S. W. 2d 381, and cases there cited.

The 1953 divorce suit was instituted by W. T. Jackson on the ground of three years separation, without cohabitation, by reason of the incurable insanity of his wife under the 8th subdivision of Ark. Stats. Sec. 34-1202, which provides for service of process upon the duly appointed and acting guardian of the insane spouse, or upon a duly appointed guardian ad litem for such insane spouse, and upon the superintendent or physician in charge of the institution where the insane spouse is confined. Statutes like this are strictly construed. 17 Am. Jur., Divorce and Separation, Sec. 152. It is also provided in Ark. Stats. Sec. 27-830 that the defense of an action against a person adjudged to be insane must be

by his regularly appointed guardian, or a guardian ad ·litem, and that no judgment can be rendered against him until after a defense by one or the other. Sec. 27-826 also prohibits the appointment of a party to such an action as guardian ad litem to defend for the insane defendant. W. T. Jackson was the duly appointed guardian of his insane wife when he filed the suit and no guardian ad litem was appointed to defend for her. In this situation the statute clearly contemplated service upon both the superintendent of the State Hospital and a guardian ad litem. The fact that the insane wife was not represented by a guardian ad litem upon whom service could be had rendered the decree against her voidable and subject to direct attack on the ground of unavoidable casualty under Sec. 29-506, supra. While appellee's verified complaint did not specifically plead an unavoidable casualty, the facts alleged and proved brought the instant proceedings clearly within the purview of that subdivision of the statute.

We are also of the opinion that appellee alleged and proved a meritorious defense to the 1953 divorce action in that W. T. Jackson was himself mentally incompetent at the time he filed the suit. In the absence of a statute so authorizing it, it is the general rule that an insane person cannot institute an action for divorce since the right to do so is regarded as strictly personal to the aggrieved spouse and no matrimonial offenses automatically effect a dissolution of the marriage. See cases cited in an annotation on the question in 19 A. L. R. 2d 182. Other annotations to the same effect are found in 70 A. L. R. 964 and 149 A. L. R. 1284. In addition to the medical testimony already referred to, there are numerous facts and circumstances which indicate that W. T. Jackson was incompetent and incapable of exercising a proper or intelligent discretion in such a delicate and purely personal matter either at the time of the institution of the suit or the rendition of the default decree.

Neither do we agree with appellant's final contention that appellee acted in bad faith and from a purely selfish motive in maintaining the instant suit. The interest of the insane widow in the property of her deceased

husband as well as in lands owned by her separately fully warranted the guardianship and maintenance of the instant suit which was duly authorized by the Phillips Probate Court. It follows that the chancellor's action in vacating the divorce decree of December 3, 1953 is correct, and the decree is accordingly affirmed.