WILLIAM LOVETT, by JESSE LOVETT, HIS NEXT FRIEND *v.* BEULAH LOVETT

5-6241                                    493 S.W. 2d 435

Opinion delivered April 30, 1973

*Paul K. Roberts,* for appellant.

*Haley & Claycomb,* for appellee.

J. FRED JONES, Justice. William Lovett, by Jesse Lovett his father and next friend, filed a petition for divorce against Beulah Lovett in which he alleged their marriage on February 23, 1963; their separation on July 1, 1966, and three years separation without cohabitation as well as general indignities as grounds for divorce. The petitioner also alleged the birth of two children, five and six years of age, as a result of the marriage. The parties will hereafter be referred to by their given names for brevity and convenience. By amendment to the petition, under order to make more definite, it was alleged that on January 11, 1952, William was adjudicated to be incompetent by the probate court of Bradley County and that the First National Bank of Warren was appointed guardian. The amendment also added desertion as alleged grounds for divorce and amended the date of separation to May, 1968.

In her answer Beulah admitted the marriage on February 23, 1963; the guardianship in 1952 and the separation in May 1968. She denied the other allegations. She counterclaimed for divorce from bed and board, and alleged that three children were born as a result of the marriage, their birth dates being September 26, 1963, November 3, 1964, and December 25, 1968. On December 14, 1970, the chancellor required the petitioner as well as the counterclaimant to make their pleadings more definite and certain. On February 3, 1971, Beulah filed an amended motion stating that following intermittent separations after their marriage on February 23, 1963, she and William finally separated in August, 1967. and had lived separate and apart for more than three conse-

cutive years without cohabitation because of the incurable insanity of William. On February 9, 1971, Jesse also filed a motion for William praying that the pleadings be conformed to the proof and that the marriage be annulled because William was mentally incapable of entering into the marriage contract. In response to Beulah's amended motion, William admitted that he and Beulah had lived separate and apart for more than three years but denied that the separation was caused by his incurable insanity. In response to William's motion, Beulah denied that William was incapable of entering into a marriage contract because of his adjudged incompetency on January 11, 1952. She denied that the marriage should be annulled.

The chancellor denied relief to both parties. In denying Beulah's counter-petition, the chancellor found that William was adjudged incompetent under the Uniform Veterans Guardian Act, Ark. Stat. Ann. § 57-501, et seq. (Repl. 1971), on January 11, 1952, and that no certificate has been filed by the Veterans Administration showing that William is still rated incompetent; that the proof does not show that William had been confined to an institution for the care and treatment of the insane for three years or prior to the commencement of the action, and that Beulah's petition for an absolute divorce should be denied for lack of proof.

In denying relief to William the chancellor applied the general rule as to insane persons stated in *Jackson, Executor* v. *Bowman, Guardian,* 226 Ark. 753, 294 S.W. 2d 344, where this court said:

"In the absence of a statute so authorizing it, . . . an insane person cannot institute an action for divorce. . ."

The chancellor then held that the only statutory authorization under which William could maintain an action for divorce is Ark. Stat. Ann. § 34-1202 (Supp. 1971) (willful desertion), and the chancellor found that since the witnesses only testified as to the separation, William had failed to prove willful desertion on the part of

Beulah. On William's petition for annulment the chancellor found that William testified on June 8, 1970, that he was in full possession of his faculties when he and Beulah were married on February 23, 1963; that Beulah testified she knew nothing of the probate proceedings and that William was not of unsound mind when they married. The court then held that William was not entitled to an annulment because of his sworn testimony pertaining to the marriage; estoppel by pleadings, and subsequent birth of children, as well as the lack of proof of mental condition, medical or otherwise, on the date of the marriage. The chancellor then pointed out that in *Hill* v. *Hopkins*, 198 Ark. 1049, 133 S.W. 2d 634, this court said:

> " '. . . the mere appointment of a guardian or continuance of the guardianship is not conclusive evidence of such mental incapacity as would make void all acts of the ward. * * *[T]here is no evidence in this entire record indicating mental incapacity, except the probate record showing the appointment of a guardian and this is not conclusive. It is *prima facie* evidence.' "

As to William's allegations of three years separation, the chancellor said:

> "The only statutory authorization for William to maintain this action is Section 34-1201 (Eight, second part, the last two sentences), which reads, 'Where either party wilfully deserts and absents himself or herself from the other for a space of one year without reasonable cause. Where the spouse so deserted shall be mentally incompetent, the court shall have the power to grant an absolute divorce upon the petition of the next friend of such incompetent or the duly appointed guardian. . . .' "

The chancellor then found that the parties need a divorce but concluded that he could not grant relief under the facts and the authorities pertaining thereto. We are of the opinion the chancellor erred in this conclusion.

The chancellor was careful to point out in his find-

ings that the First National Bank of Warren was the guardian of William's *estate* and not of his *person*. We find no evidence in the record that William was ever under guardianship as to his person and we find no evidence indicating a present or recent need for a personal guardian. Certainly his own testimony does not indicate such need. We are of the opinion that there is a distinction between insanity, or the degree of incompetency that would preclude a person from entering into a marriage contract or suing for the dissolution of one entered into, and the degree of incompetency requiring the appointment of a guardian for the estate of a veteran for the purpose of receiving veteran's benefits.

William testified at the trial in this case and there is nothing in his testimony to indicate that he is insane. There is no evidence in the entire record that he is incompetent to handle his personal and business affairs except a medical certificate filed with the petition for the appointment of a guardian and the order of the Bradley County Probate Court dated January 11, 1952, more than 20 years ago. William was declared incompetent to handle his business affairs and a guardian of his estate was appointed upon the petition of Merchants and Planters Bank of Warren accompanied by a certificate of the chief attorney of the Veterans Administration, to the effect that William had been rated incompetent by a staff of physicians in accordance with laws and regulations governing Veterans Administration and requiring the appointment of a guardian as a condition precedent to the release of benefits due the veteran. The probate court order of January 11, 1952, recited a finding that William was adjudged to be incompetent and in need of a guardian for his estate, and the Merchants and Planters Bank of Warren was appointed guardian of William's estate. The guardian was then authorized to release to William's father, Jesse M. Lovett, funds for food, clothing, spending money, etc. for William.

In 19 A.L.R. 2d § 20, p. 182, is found the following:

"Since the right to sue for a divorce is regarded as strictly personal to the aggrieved spouse, and no

matrimonial offenses automatically effect a dissolution of the marriage, the general rule is that, in the absence of statute so authorizing, an insane person cannot institute an action for divorce." See also *Jackson* v. *Bowman,* 226 Ark. 753, 294 S.W. 2d 344.

Section 21 of the same annotation, however, states as follows:

"In the absence of a legal adjudication of *insanity* it will be presumed generally that a person has the capacity to bring a divorce action, even though not of a strong mind, it being essential only that the plaintiff have sufficient mentality to understand the nature of the action taken." (Emphasis added).

In the Georgia case of *Akin* v. *Akin,* 163 Ga. 18, 135 S.E. 402, a wife who had become insane and been committed to a state sanitarium from which she had been allowed to go on furlough under custody of her mother, the trial court was authorized to find that the plaintiff had sufficient mental capacity to institute and prosecute a suit for alimony without a next friend or guardian ad litem.

In *Serio* v. *Serio,* 201 Ark. 11, 143, S.W. 2d 1097, a suit for divorce was brought against the wife under the three year separation statute. The wife was incurably insane and had been confined in hospitals for the insane for almost 20 years. The complaint was dismissed for want of equity and in affirming we said:

"Our construction of the statute is that it assumes that the period of living apart without cohabitation for three years must have been the conscious act of both parties in order to entitle one of the parties to a divorce. The purpose and intent of the act was not to grant divorces on the ground of insanity of either party else it would have said so. * * * We find nothing in the act which manifests an intention to make insanity a ground for divorce."

We concluded the opinion in that case, however, with the following statement:

"Since the undisputed evidence in this case shows that appellee was not capable of committing a conscious act during the period of separation, the trial court correctly dismissed appellant's complaint."

In the case of *Hill* v. *Hopkins, supra,* cited by the chancellor in the case at bar, a guardian had been appointed for Hill because of some mental defect he had and the guardianship had never been discharged. Some real property had been purchased by the Hills and legal title taken in the wife's name. Hill had made declarations that his wife owned the property. The wife conveyed the property in exchange for an automobile and Hill attempted to set aside the conveyance for fraud. Hill sought to avoid the effect of his prior declarations by declaring that he was still laboring under the disability of mental incapacity and that his wife was in fact a trustee. Hill offered considerable evidence as to his incapacity, but there was other evidence that he went about conducting his affairs as an ordinary competent person would do. In that case we said:

"Mr. Hill seeks to avoid the effect of his declarations that his wife was the owner by alleging the continuance of his mental incapacity, until later on when he procured his guardian to be discharged, and after the discharge of his guardian he was then free to assert the invalidity of his acts, and seek to establish a trust and recover the land. The error of this conclusion on his part arises out of the well known fact that the mere appointment of a guardian or continuance of the guardianship is not conclusive evidence of such mental incapacity as would make void all acts of the ward. * * * True, he may have been easy to anger and may have frequently shown his angry moods. He may have been peculiar, but we submit that there is no evidence in this entire record indicating mental incapacity, except the probate record showing the appointment of a guardian and this is not conclusive. It is *prima facie* evidence. It had been frequently so held. 14 R.C.L. 621, § 73."

In the recent case of *Wilson* v. *Rodgers,* 250 Ark. 335; 468 S.W. 2d 739, we rendered a per curiam opinion on petition for rehearing in which we pointed out that we ordinarily decide equity cases *de novo* on appeal but that when the cause has been tried in chancery court upon an erroneous theory, and we are unable to determine from the evidence before us what decree should have been rendered, we will in the furtherance of justice remand the cause to be reopened to additional proof, so that the case may be determined upon proper principles.

In the case at bar the evidence is clear that the parties have lived separate and apart without cohabitation for over three years. The only evidence bearing on the question of William's insanity or incompetency is the probate court order dated January 11, 1952, based on veteran hospital medical examinations conducted prior to that date. Beulah testified that William should be in a hospital but she also testified that she associated with him for approximately one year prior to their marriage and that she didn't even know he was under guardianship until approximately two years after their marriage, during which time he appeared to be perfectly normal. Beulah is a school teacher with a college degree. This marriage occured 11 years after a guardian was appointed for William's estate and there is no evidence that William's condition has changed since the marriage.

We conclude, therefore, that in the interest of justice, this case should be remanded to the chancery court for further proceedings consistent with this opinion.

Reversed and remanded.